Case 7:19-cv-00029 Document 15 Filed on 08/21/19 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
August 21, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NORMA LINDA GONZALEZ<br>　Plaintiff, | §<br>§<br>§ | |
| VS. | § | CIV. NO. 7:19-cv-00029 |
| | § | |
| ANDREW M. SAUL,[1]<br>Commissioner of Social Security,<br>　Defendant. | §<br>§<br>§<br>§ | |

## **REPORT & RECOMMENDATION**

Plaintiff, Ms. Norma Linda Gonzalez, initiated this action by filing a Complaint for Review of a Social Security Disability or Supplemental Security Income Decision pursuant to 42 U.S.C. § 1383(c)(3). (Dkt. No. 1 at 1-2.) On January 29, 2019, Plaintiff filed Amended Complaint for Review of a Social Security Government Pension Offset Decision pursuant to 42 U.S.C. § 402(k)(5). (Dkt. No. 2.) This case was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b). On April 3, 2019, Defendant filed an answer to Plaintiff's Complaint. (Dkt. No. 8.) Now pending before the Court are cross-motions for summary judgment by Plaintiff and Defendant as well as their respective responses to said cross-motions.[2] (Dkt. Nos. 11-14.) This case is ripe for disposition on the record.

---

[1] As noted in Defendant's last filing, Andrew M. Saul is now Commissioner of Social Security and is automatically substituted in place of the former acting Commissioner, Nancy A. Berryhill, per Fed. R. Civ. P. 25(d). (Dkt. No. 14 at 1.) Mr. Saul was sworn in on June 17, 2019. *Andrew M. Saul Sworn in as Comm. of Soc. Sec. Admin., Press Release,* Soc. Sec. Admin. (June 17, 2019), https://www.ssa.gov/news/press/releases/2019/#6-2019-1.

[2] Though many courts have found that summary judgment is improper in Social Security cases, the Fifth Circuit has held that summary judgment may be used if the court properly "reviewed the record and based its judgment on a finding of substantial evidence in the administrative record." *Lovett v. Schweiker,* 667 F.2d 1, 2-3 (5th Cir. 1981).

Plaintiff claims that the Commissioner of the Social Security Administration[3] ("the Commissioner") improperly applied the Government Pension Offset (GPO) to her Social Security benefits. (Dkt. No. 2 at 3.)[4] As will be discussed further below, Plaintiff's claim should be dismissed. Review of the record of the Social Security Administration (SSA) proceedings show that substantial evidence supports the Administrative Law Judge's (ALJ) decision that the Government Provision Offset applies.

After a careful review of the record and relevant law, the undersigned recommends that Defendant's Cross-Motion for Summary Judgment be **GRANTED** (Dkt. No. 12), that Plaintiff's Motion for Summary Judgment (Dkt. No. 11) be **DENIED**, and that Plaintiff's Amended Complaint (Dkt. No. 2) be **DENIED**. It is further recommended that Plaintiff's Amended Complaint (Dkt. No. 2) be **DISMISSED** with prejudice, and the case be closed.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for her deceased husband's Social Security benefits on March 31, 2015. (Dkt. No. 9-1 at 26.)[5] At first, Plaintiff was notified that her claim was not approved because she failed to prove her marriage to her late husband. (*Id.* at 30.) However, on October 22, 2015,

---

[3] The change in Commissioner will not affect these proceedings. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[4] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Holmes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). The Amended Complaint (Dkt. No. 2) does not reference the first Complaint (Dkt. No. 1) and the undersigned finds that the Amended Complaint supersedes the first complaint filed on January 28, 2019. It appears that the Amended Complaint was filed to clarify that the claim is pursuant to denial of benefits under 42 U.S.C. §402(k)(5) versus a claim for Supplemental Security Income under 42 U.S.C. § 1383(c)(3). (*Compare* Dkt. No. 1 at 2, with Dkt. No. 2 at 2.)

[5] The specific page number is in reference to the assigned number set by electronic filing of the documents in ECF/PACER system and is not in reference to the Bates-stamp number placed on the document by the Social Security Administration unless otherwise noted.

Plaintiff's claim was approved but she would not receive her husband's benefits because two-thirds of the amount of her government pension based on her employment with a Texas school district and the Teacher Retirement System of Texas (TRS) is equal to or larger than her monthly Social Security Benefit. (*Id.* at 36.) Plaintiff then asked for reconsideration claiming that "the last day of my employment was covered under social security and teacher retirement. I am exempt from the GPO provision."[6] (*Id.* at 39.)

> On reconsideration, the SSA affirmed the original decision and explained that:
>
> Documents from TRS show that you retired in December 2003. Your record shows that you were employed by Weslaco in 2003 through 2008. Your last day of employment should have been in 2008. You filed for spouse's benefits and retired after June 2004. We have asked you for documents to show that you had 60 months of covered wages and those wages were considered in your pension. Your document of June 24, 2015 does not show that you had 60 months of covered earnings.

(*Id.* at 40.) Plaintiff then requested a hearing before an ALJ. (*Id.* at 42.) A hearing was held on November 28, 2017, before the ALJ. (*Id.* at 99.) Plaintiff testified that the prior decision in her case was wrong because she retired in December of 2003 and only did substitute teaching after this date. (*Id.* at 104.) Plaintiff claimed that the SSA incorrectly decided that she retired later than December of 2003 because Plaintiff was employed as a substitute teacher for the school district after her retirement. (*Id.*) Finally, Plaintiff stated that she was told by the Social Security Office in McAllen that "to qualify for the last exemption, all I had to do is be married at the time that I retired . . . the last day had to be covered under Social Security and the TRS . . . and this had to be done before 2004." (*Id.* at 105-06.)

---

[6] GPO is in reference to the Government Pension Outset Provision which reduces a spouse's social security benefits if said individual is "receiv[ing] a federal, state, or local pension based on earning from non-covered government employment." POMS GN 02608.100(A); *see also* 42 U.S.C. § 402(k)(5); 20 C.F.R. § 404.408a. "POMS" is in reference to Social Security Administration's Program Operations Manual System (POMS); "GN" is in reference to "General" rules or regulations. "The POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits." *POMS Home Page*, Soc. Sec. Admin., https://secure.ssa.gov/apps10/ (last visited Aug. 9, 2019).

On April 30, 2018, a supplemental hearing was held before the ALJ. (*Id.* at 110.) At the supplemental hearing, Juan Garcia, a claims specialist with Social Security Administration testified about Plaintiff's claim. (*Id.* at 110-11.) Mr. Garcia was asked about the "determination in this matter" and responded that "[t]he determination that was done under the Government Pension Offset, which were earnings that were earned not -- when they did not pay into Social Security. So, the decision was done based on what she used to do her retirement under the non-covered pension." (*Id.* at 111.) As to the issue of the retirement date, Mr. Garcia responded that "[Plaintiff] had done the -- a retirement date prior to an exemption for the government pension offset. So, she had retired before a set date that was July the 1st of 2014 [sic] [2004] where the retirement was done before the last day of employment. And it was done through an employer that paid into Social Security and done through the last date. It would have been exempted to not count the government pension off set. That what she had - - the decision that was done was at the beginning was based on that." (*Id.* at 111-112.) Per the ALJ, there was "contradictory information . . . that had been submitted . . . [a]bout when exactly her last date [of service] was?" (*Id.* at 112.) Mr. Garcia responded that "[Plaintiff] continued to work under that program [TRS]." (*Id.*) Mr. Garcia noted that "[b]ecause she did continue to work with a non covered [position]. And then that goes into a different role under the last day exemption." (*Id.*) Plaintiff responded by claiming that "the work I did after retirement had nothing to do with Teacher Retirement System." (*Id.* at 113.) Mr. Garcia's further clarified that "it did look like there was non-covered pensions after that date [of claimed retirement]. So, we would have to actually go in there and check to see the actual date after the date of retirement that she's claiming . . . . for this hearing." (*Id.* at 114.) Plaintiff responded that she did not "understand how this Teacher Retirement

interfered with my Social Security work afterwards." (*Id.*) The ALJ then took the issue under advisement and concluded the hearing.

On June 26, 2018, the ALJ issued an opinion determining that the GPO was correctly applied to Plaintiff's application for widow's benefits. (Dkt. No. 9-1 at 13-23.) The ALJ noted that the first decision from the SSA on this matter made a finding that while records from TRS reflected that she "retired in December 2003", the Plaintiff's records showed employment by Weslaco I.S.D. from 2003 through 2008 and therefore her last day of employment was in 2008. (*Id.* at 22.) In reviewing this matter, the ALJ noted that the Plaintiff's "earnings records demonstrate she had non-covered earnings at Weslaco Independent School District from 2004 to 2009." (*Id.*) The ALJ then upheld the previous ruling and determined that Plaintiff did not meet the 60-month rule of covered employment which is an applicable exemption to the GPO for those who leave their position after June 30, 2004. (*Id.* at 23.) In reaching this holding, the ALJ did not mention anything about Plaintiff's claim that she is exempt under the previous last-day exemption that Plaintiff had been claiming through-out the process. (*Id.* at 23.) On November 30, 2018, the SSA Appeals Council upheld the ALJ's decision. (*Id.* at 4.) In upholding the decision, the Appeals Council noted that "copies of [Plaintiff's] 2007 W-2's and Form 1099's from [TRS], South Texas College and the Weslaco [I.S.D.] . . does not show a reasonable probability" that the outcome would be different. (*Id.* at 5.) Such evidence was not set forth as exhibits in these proceedings. (*Id.*) In response, Plaintiff initiated the present action on January 28, 2019, contesting the decision of the ALJ. (Dkt. No. 1 at 3.)

## SUMMARY OF THE PLEADINGS

Plaintiff claims that the ALJ's decision upholding the denial of her husband's benefits due to the offset is incorrect because "[b]ased on GN 02608.102, GPO does not apply if the last day of

5

state service was in a covered position (1) under social security; (2) by pension plan (TRS in this case); and (3) Performed last day of covered service prior to July 1, 2004." (Dkt. No. 2 at 3.) According to Plaintiff, she "proved all three and still was denied. I returned to work as a Substitute Teacher but never made contribution to TRS, therefore I should be exempt." (*Id.*) It appears from the record that Plaintiff believes the last-day exemption applies if an individual's last day paying into a government pension was before July 1, 2004, and that their last day of work in which that individual payed into the pension was also covered by Social Security. (Dkt. No. 13 at 3-4; Dkt. No. 9-1 at 104-06.)

Defendant, in response to Plaintiff's assertions stated above, maintains that Plaintiff did not meet the requirements for the 60-month exemption. (Dkt. No. 12-1 at 4.) In all its filings in the case, Defendant does not directly address Plaintiff's claim for this last-day exemption. Defendant has failed to even acknowledge the GPO exemption contained in POMS GN 02608.102. (*See* Dkt. Nos. 8, 12, 14.) Instead, the closest Defendant has come to directly responding to Plaintiff's claim was in its final paragraph within the most recent filing:

> Nevertheless, Plaintiff argues that the work she did after her December 2003 "retirement" does not impact her eligibility for a GPO exemption. . . . However, the hypotheticals Plaintiff relies upon, ostensibly from the Congressional Research Service, pertain to situations where an individual returns to work after applying for and receiving spousal benefits that are exempt from GPO.

(Dkt. No. 14 at 6.)

Based on the claim, this court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## APPLICABLE LAW & ANALYSIS

### I. Standard of Review

Per 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing. Review of the

Commissioner's decision is limited to whether the decision is "supported by substantial evidence" and "whether the Commissioner used the proper legal standards to evaluate the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Salmond*, 892 F.3d at 817 (quoting *Williams v. Admin. Review Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). In applying the substantial evidence standard, the court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Further, the claimant bears the burden of proof in establishing her entitlement to widow's benefits. *Deters v. Sec. of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986). Thus, the court must affirm the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "While substantial deference is afforded the Commissioner's factual findings, legal conclusions and claims of procedural error are reviewed *de novo*." *Gorgol v. Berryhill*, SA-17-CA-109-HJB, 2017 WL 8181018, at *2 (W.D.Tex. Oct. 18, 2017) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003), and *Gutierrez v. Barnhart*, 2005 WL 1994289, at *4 (5th Cir. Aug. 19, 2005)).

**II.     Spousal Benefits and the Government Penson Offset (GPO):**

There is no dispute that Plaintiff qualified for her spousal benefits, the dispute is whether or not the Government Pension Offset per 42 U.S.C. § 402(k)(5) is applicable in this situation. (Civ. Dkt. No. 9-1 at 16.) The relevant provisions under POMS cited by the ALJ are GN 02608.100 ("Government Pension Offset") and GN 02608.107 ("Exemption for Last 60 Months

7

of Employment Covered Under Social Security"). (*Id.* at 16-21.) The applicable section under the Code of Federal Regulations, which is the basis for the POMS, states the following:

> When reduction is required. We will reduce your spouse's benefit for each month that you receive a government pension based on noncovered employment, unless one of the exceptions in paragraph (b) of this section applies.

20 C.F.R. § 404.408a(a)(2) (2015).[7] Such a reduction, or "Government Pension Offset" as it is termed, does not apply in the following circumstance:

> (6) If you are receiving a government pension and the last 60 months of your government employment were covered by both Social Security and the pension plan that provides your government benefits.

20 C.F.R. § 404.408a(b)(6) (There are a total of eight listed exemptions to the GPO in the Code of Federal Regulations; as noted, Plaintiff believes the last-day exemption is applicable to her situation).

The ALJ, while noting that Plaintiff did qualify for the benefits, found that Plaintiff did not "meet her burden of proof showing she meets the requirements for the last 60-month rule of covered employment. . . ." (Dkt. No. 9-1 at 23.) For claims such as Plaintiff's, "the new exemption requires that the last 60 months of a person's government service before retirement be covered by both Social Security and the pension plan in order to avoid reduction under the GPO." POMS GN 02608.107(A); *see also* 20 C.F.R. § 404.408a(b)(6).

### III. Last-Day Exemption Claim

Plaintiff never sought to be exempt from the GPO pursuant to the 60-month exemption but instead argued that she qualified under the last-day exemption. (Dkt. No. 11-1 at 11.) This last-day exemption is pursuant to 20 C.F.R. § 404.408a(b)(8):

> The reduction does not apply: . . . (8) You were a State or local government employee, . . . , your last day of service was in covered employment, and (i) You

---

[7] 20 C.F.R. § 404.408a is entitled "Reduction where spouse is receiving a Government pension."

filed for spouse's benefits before April 1, 2004 and became entitled to benefits based on that filing, or (ii) Your last day of service was before July 1, 2004.

20 C.F.R. § 404.408a(b)(8).

This is set out in POMS as follows:

> "The *Social Security Act of 2004 (P.L. 108-203)* amended the Government Pension Offset (GPO) provisions to require that State and local government employees be covered by Social Security throughout their last 60 months of employment to be exempt from GPO. Prior to this legislation, GPO did not apply if an individual's last day of employment was in a position that was covered by both Social Security (under a section 218 agreement) and a State or local government pension system. The last day exemption may still apply if the last day of employment was before July 1, 2004, or if the person filed for a Social Security spouse's benefit's before April 1, 2004, and was entitled to those benefits based on that filing.

POMS GN 02608.102(A)(1); *see also* Social Security Protection Act of 2004, Pub. L. No. 108-203, § 418(c)(1), 118 Stat. 493, 533 (2004).[8]

> Therefore, under the exemption:
>
> GPO does not apply if, on an individual's *last day* of State or local government service, he or she was in a position that was covered:
>
> - under Social Security, and
> - by the State or local government pension plan; and either
> - performed his or her last day of covered government service (whether on account of retirement, resignation, or termination) prior to July 1, 2004; or
> - filed for Social Security spouse's benefits before April 1, 2004, and was entitled to benefits based on that filing.

POMS GN 02608.102(B)(1) (emphasis added).

---

[8] Per the Congressional Research Service, the GPO was amended because of the "revelation that growing number of state and local government workers had been making use of a little-known provision of the law that allowed them to escape application of the GPO if they switched jobs at the very end of their government careers. The provision granted an exemption to the GPO, if, on the last day of one's government service, he or she worked in a Social Security-covered position. On August 15, 2002, the Government Accountability Office (GAO) released a report that found that, as of June 2002, 4,819 individuals in Texas and Georgia has switched to Social Security-covered positions to avoid having the GPO applied to their Social Security spousal benefits. The GAO projected that the cost of the program for these cases could be about $450 million." Cong. Research Serv., RL32453, Social Security: The Government Pension Offset (GPO) at 13-14 (2019) [hereinafter CRS Report]. The passage of PL 108-203 was to remove this "loophole" but it did "grandfather" those individuals whose last day of employment was before July 1, 2004, or those who filed for benefits prior to April 1, 2004.

Defendant's central argument is that Plaintiff does not meet "the requirement for the last 60-month rule of covered employment under Social Security." (Dkt. No. 12-1 at 4.) Plaintiff does not contest that her last 60-months of work were not covered under Social Security. (Dkt. No. 13 at 3.) Instead, Plaintiff claims that she qualifies for this last-day exemption. Quoting a publication by the Social Security Administration, Plaintiff believes that the "last day of State or local government service" phrase contained in POMS GN 02608.102(B)(1) should be understood to mean the "last day of employment (*that your pension is based on*)." (Dkt. No. 11-1 at 5 (quoting Soc. Sec. Admin., Pub. No. 05-10007, ICN 451453, Gov't Pension Offset (2019))(emphasis added)). Plaintiff also cites to a Congressional Research Service publication that presents a hypothetical situation in which a person would be exempt from the GPO under the last-day exemption. (Dkt. No. 11-1 at 7-9.)

The Commissioner, in making its benefits decision, does not rely on a Congressional Research Service Report or an SSA published flyer concerning the Government Pension Offset.[9] The Program Operations Manual System, or POMS, is only an interpretation of the law by the Commissioner. *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). The POMS is not a regulation enacted pursuant to formal rulemaking procedures and therefore does not have binding legal force. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). Instead, it is the United States Code (U.S.C.) and Code of Federal Regulations (C.F.R.) that are legally binding on the Commissioner. *See American Portland Cement Alliance v. E.P.A.*, 101 F.3d 772, 476 (D.C. Cir. 1996) (explaining that publication in the Code of Federal

---

[9] There is a disclaimer on the last page of the CRS Report: "CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely as the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role." CRS Report, *supra* note 8, at 16. In other words, it is an informational bulletin prepared for members of Congress.

Regulations provides that the regulation carries legal effect and has undergone formal rulemaking procedures).

The plain meaning of the C.F.R. is that for the last-day exemption to apply, one must have performed his or her last day of government service, which must have been covered under Social Security, prior to July 1, 2004, or have filed for Social Security spousal benefits before April 1, 2004. 20 C.F.R. § 404.408a(b)(8). Unfortunately for Plaintiff, her citations do not support an alternative interpretation. Plaintiff's citation to SSA Publication No. 05-10007 is misplaced. (Dkt. No. 11-1 at 5.) The "last day of employment (that your pension is based on)" does not mean *the last day of employment in which you paid into your pension.* Soc. Sec. Admin., Pub. No. 05-10007, ICN 451453, Gov't Pension Offset (2019) (stating that an individual may not have their Social Security benefits reduced if the individual is a "state, or local government employee and your government pension is from a job for which you paid Social Security taxes; and . . . [y]our last day of employment (that your pension is based on) is before July 1, 2004"). Likewise, Plaintiff's use of the hypothetical from the Congressional Research Service offers no support for her interpretation. (Dkt. No. 11-1 at 8.) The Congressional Research Service report stated that a person would be exempt from the GPO if:

> *Their last day of government service occurred before July 1, 2004,* and *they worked their last day in a Social Security-covered position within the same retirement system.* In other words, if a worker switched from noncovered government work to Social Security-covered work for her last day of work within the same retirement system, she is exempt from the GPO, even if she files for Social Security benefits at a later date. However, if a worker returns to work in a noncovered position in the same retirement system that she previously retired from and new contributions are made by either the employee or employer to the noncovered pension system, her last-day exemption from the GPO will be revoked and she will be subject to the new 60-month requirement for exemption from the GPO.

11

CRS Report, *supra* note 8, at 14. Though the last sentence of the hypothetical may muddle the understanding of the exemption, the first sentence is clear; the last day of government service must be before July 1, 2004. *Cf.* 20 C.F.R. § 404.408a(b)(8)

The evidence is set forth on the record, and as noted by the claims specialist at the last ALJ hearing, that the Plaintiff's government service for the school district continued past December 2003. (Dkt. No. 9-1 at 112.) Evidence on the record of such service included Plaintiff's continued employment with Weslaco I.S.D. from 2003 to 2008. (*Id.* at 22.) Plaintiff did not dispute any of this evidence and testified to the fact that she worked after "retirement" by substitute teaching at the school district during the first hearing with the ALJ. (*Id.* at 104-06.) Further, Plaintiff also continued to work for South Texas College[10] after 2003. (*Id.* at 21.) This last information was gathered from a letter from the South Texas College dated October 9, 2015 (*id.* at 35) and an SSA Detailed Earnings Query (DEQY) (*id.* at 89-91).

Plaintiff continued to work in a government position with the school district after July 1, 2004, thus disqualifying her from the last-day exemption as her retirement date was not her "*last day of service*" in a government position as required under the relevant regulations. *See* 20 C.F.R. § 404.408a(b)(8). As such, the only applicable exemption under the Code of Federal Regulations to the GPO is the 60-month exemption reviewed by the ALJ. To that end, substantial evidence in the record supports the ALJ's decision that Plaintiff was not exempt from the GPO as she had not worked for the last 60 months in a covered position to qualify for said exemption. *See* 20 C.F.R. § 404.408a(b)(6); *see also Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (substantial evidence is "more than a mere scintilla, and less than a preponderance."); *Greenspan v. Shalala*,

---

[10] South Texas Community College (STCC) was renamed in June 2004 as South Texas College. *See South Texas College Celebrates Its First 25 Years*, South Texas College, https://www.southtexascollege.edu/25-years/ (last visited Aug. 19, 2019).

38 F.3d 232, 236 (5th Cir. 1994) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the ALJ's decision must be affirmed. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").[11]

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law, the undersigned recommends that Defendant's Cross-Motion for Summary Judgment be **GRANTED** (Dkt. No. 12), that Plaintiff's Motion for Summary Judgment (Dkt. No. 11) be **DENIED**, and that Plaintiff's Amended Complaint (Dkt. No. 2) be **DENIED**. It is further recommended that Plaintiff's Amended Complaint (Dkt. No. 2) be **DISMISSED** with prejudice, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P.

---

[11] On May 15, 2019, Plaintiff filed a Motion for Summary Judgment with several exhibits in support of her claim. Exhibit A is a check stub from STCC for pay period Dec. 19, 2003 to Dec. 31, 2003. (*See* Dkt. No. 11-2.) Said exhibit was provided in the course of the ALJ review and is identified as Exhibit 17, Bates-stamp No. 71. (Dkt. No. 9-1 at 73.) Exhibit B is letter from TRS dated June 24, 2015, setting forth that Plaintiff retired at the end of Dec. 2003. (Dkt. No. 11-3.) Said exhibit was also provided during the ALJ review and is identified as Exhibit 3, Bates-stamp No. 31. (Dkt. No. 9-1 at 33.) Exhibit C is marriage certificate and, as noted, Movant's marriage is not a disputed issue. (Dkt. No. 11-4.) The remaining exhibits are exhibits that have not been provided during the ALJ proceedings: Exhibit D – Letter dated Jan. 10, 2019 from Weslaco I.S.D. explaining that Plaintiff worked as a substitute teacher in 2004 but did not make any contributions to TRS or the FICA Alternative Retirement Plan; Exhibit E – W-2 Tax Forms from Weslaco I.S.D., 2004-2009, setting forth that only Medicare tax was withheld during that work period; Exhibit F – Form 1099-R's from TRS, 2005-2013. (Dkt. Nos. 11-5, 11-6, 11-7.) Exhibits E and F appear to be similar to the documents referenced by Appeal's Counsel in upholding the ALJ's decision but were not admitted as exhibits. (Dkt. 9-1 at 5.) New evidence cannot be considered at this time. *See Rains v. Sec's of HHS*, 731 F. Supp. 778, 780 (E.D. Tex. 1989) ("New facts cannot be considered for the first time on review. The only inquiry this court may pursue is that of whether the final decision of the Secretary is supported by substantial evidence, contained in the record of the ALJ."). However, even if the exhibits could be considered, the documents do not assist Plaintiff as said documents, in particular Exhibit E, are further proof that Plaintiff's last *day of service* with the government was after Plaintiff's "retirement" in Dec. 2003.

72(b). Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Movant and counsel for Respondent.

**DONE** at McAllen, Texas, this 21st day of August, 2019.

Juan F. Alanis
United States Magistrate Judge